UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| HANNAH SOLANO, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: _____ |
| | ) | |
| v. | ) | JURY DEMAND |
| | ) | |
| CENTERSTONE OF TENNESSEE, INC. | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiff Hannah Solano suffers from Type 1 diabetes, obsessive-compulsive disorder "OCD" and autism spectrum disorder. After informing her supervisors of her medical conditions, and submitting a formal request for reasonable accommodations so she could continue to perform her job satisfactorily, Defendant pulled Ms. Solano off all her shifts. A few weeks later, she was terminated.

Plaintiff brings this action pursuant to the Tennessee Disability Act, Tenn. Code Ann. § 8-50-103, and the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12101 *et seq*., alleging she was denied reasonable accommodations, subjected to illegal discrimination and retaliated against on the basis of her disabilities.

## PARTIES

1. Plaintiff, Hannah Solano ("Plaintiff" or "Ms. Solano") is a citizen and resident of Midland County, Michigan, and a former employee of Defendant. Plaintiff worked at Defendant's location in Nashville, Tennessee.

2. Defendant Centerstone of Tennessee, Inc. ("Centerstone"), is a Tennessee non-profit corporation. Its principal place of business is 44 Vantage Way, Suite 400, Nashville, TN

1

37228. Its registered agent for service of process is C T Corporation System, 300 Montvue Rd, Knoxville, TN 37919-5546.

3. At all material times, Defendant has been an employer as defined by the Americans with Disabilities Act of 1990, 42 U.S.C. § 12111.

4. Plaintiff is a qualified individual with a disability under 29 C.F.R. §§ 1630.2(g) and (h)(1) and (h)(2).

5. At all material times, Defendant has been an employer as defined by the Tennessee Disabilities Act, T.C.A. § 8-50-103.

6. At all material times Plaintiff was employed by Defendant Centerstone of Tennessee, Inc.

## JURISDICTION AND VENUE

7. This is an action for unlawful employment practices brought under the Americans with Disabilities Act, as amended, 42 U.S.C. §§ 12101 *et. seq*. ("ADA") (Counts I, II, and III), and the Tennessee Disability Act, T.C.A. § 8-50-103 ("TDA") (Counts IV and V).

8. This Court has jurisdiction under 28 U.S.C. § 1331, 28 U.S.C. § 1367, 42 U.S.C. § 12117(a) and 42 U.S.C. § 2000e-5(f)(3).

9. Venue is proper under 28 U.S.C. § 1391(b)(2), because the causes of action stated herein arose in this judicial district. Venue is further proper in this Court under 28 U.S.C. § 1391(b)(1) because the Defendant has its principal place of business in this County.

10. On November 7, 2022, Plaintiff filed a timely Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").

11. On September 6, 2023, Plaintiff received a Notice of Right to Sue from the EEOC.

12. Plaintiff complied with all conditions precedent to the filing of her claims pursuant to 42 U.S.C. § 12101 *et. seq*.

**FACTS**

13. Ms. Solano was employed by Centerstone from July 19, 2021, until her termination on October 3, 2022.

14. Centerstone is a not-for-profit health care organization that delivers mental health care, addiction treatment, and community education. Its administrative offices are located in Nashville, Tennessee.

15. Ms. Solano worked as a Crisis Care Consultant for Centerstone.

16. As a Crisis Care Consultant, she was responsible for answering calls from individuals experiencing a mental health crisis and routing them to receive ongoing support or medical intervention.

17. Throughout Ms. Solano's employment with Centerstone, she received positive feedback and strong performance evaluations.

18. In 2020, Ms. Solano was diagnosed with Type 1 diabetes, a chronic condition that significantly impairs the major life activities of working, eating, and endocrine function. Her disability affects the major bodily systems of her endocrine function. She has to occasionally check her blood sugar, take medications, and eat small snacks during working hours.

19. On September 6, 2022, Ms. Solano was diagnosed with autism spectrum disorder, a condition that significantly impairs the major life activities of talking, learning, working, communicating, and interacting with others. Her disability affects the neurological major body system. Her symptoms include anxiety, depression, heightened sensory sensitivity, repetitive behaviors, and difficulty articulating emotions, among others.

20. She has also been diagnosed with obsessive-compulsive disorder, chronic skin picking, and major depressive disorder.

21. To manage her symptoms, Ms. Solano takes multiple medications and utilizes therapeutic support.

22. Centerstone was aware that Ms. Solano was an individual with a disability. It occasionally received doctors' notes which stated her diagnoses and symptoms.

23. Ms. Solano also had conversations with her supervisors and individuals in human resources regarding her disabilities and their effects on her ability to perform her job functions as early as 2021.

24. On July 26, 2021, she disclosed her Type 1 diabetes diagnosis to Centerstone.

25. On May 17, 2022, Ms. Solano informed her supervisor, Kelly Bombardiere ("Ms. Bombardiere"), Program Manager of Crisis Center Services, that she had become hypoglycemic during a call with a client.

26. Though she was able to complete the call successfully, Ms. Solano asked how she should handle the situation in the future if it were to happen again, because "[c]ontinuing to talk while hypoglycemic could be dangerous because I get confused and could pass out or seize if I don't eat."

27. Ms. Bombardiere told Ms. Solano she should continue to keep food at her desk to snack on, and that "it would be best to also get a Bluetooth/wireless headset so in the event you would need to go into another room to get a supply while on a call, you could. I have some wireless headsets that I've been testing and can have one mailed to you."

28. Ms. Solano agreed that using a headset would be a "good idea."

29. However, she never received the headset from Ms. Bombardiere.

## Ms. Solano is Diagnosed with Autism, and Requests Accommodations

30. On April 13, 2022, Ms. Solano disclosed to Ms. Bombardiere that she suffered from mental health conditions and was being tested for Autism.

31. On July 12, 2022, Ms. Solano sent an e-mail to Ms. Bombardiere and Sherry Randles, Director of Mobile Crisis Care at Centerstone, to inquire about "possible accommodations that might help me at work."

32. In that e-mail, she explained to her supervisors:

I was diagnosed with OCD this year and I am waiting for an official diagnosis of Autism at the end of August (although it has become very clear throughout the last several months that I am indeed Autistic). The way this affects me at work is that I feel dysregulated when something is unpredictable. To make myself more comfortable, I have been obsessively keeping track of my coworkers in the queue and how many people are ahead of me. I check the queue every few minutes… so that I can know exactly when to expect my next phone call. I also sometimes struggle to process a call in a very short period of time and it is dysregulating when I end a call and no one else is in ready and I have to take the next call waiting immediately after finishing my last call. **Thankfully, this does not happen often**, but when it does, it causes a lot of distress and panic. If needed, my therapist is willing to fill out the paperwork with HR to provide evidence of my anxiety and needs.

33. She then requested two (2) accommodations to "help [her] function better at work."

34. The first request was to have a short break between calls so she could process them and avoid dysregulation.

35. The second request was to have access to the supervisor's version of the call queue so she could see how many coworkers were ahead of her, and thereby help to treat the anxiety she experienced as a result of not knowing where she was in the queue.

36. Ms. Bombardiere referred Ms. Solano to Cindy Pegg, ("Ms. Pegg") a representative from Centerstone's Human Resources who could handle the accommodation requests.

37. On September 6, 2022, Ms. Solano received a letter from her psychologist, Michelle McAtee, formally diagnosing her with Autism. This letter was shared with Centerstone.

38. The letter stated, in part:

If possible, at work Hannah will benefit from knowing the order of the call queue so that she can see when she will be the next to receive a call… She should have the ability to take a break in a quiet area when needed, have a very predictable schedule and receive advance notice about upcoming changes.

39. The very next day, Ms. Solano contacted Ms. Pegg to ask how to submit a formal request for accommodations.

40. Ms. Pegg gave her the necessary ADA paperwork to complete.

41. Within a week, Ms. Solano submitted the completed paperwork.

**Ms. Solano Earns Strong Performance Reviews While Waiting to Hear Back about her Request for Accommodations**

42. The following week, Ms. Solano received her monthly audit (the "September audit") evaluating her work performance. She earned a 19/21 score from Team Lead Shannon Christian ("Ms. Christian").

43. The September audit included the following remarks: "Hannah – you have such a soothing tone when you speak to callers. You did a great job of letting him tell his story while also paraphrasing to him what you were hearing to clarify that you were understanding his thoughts," and "Your documentation is great."

44. On September 13, 2022, Ms. Solano also received her Q1 report from Krystal Haseltine, an Online Emotional Support Quality Care Coordinator at Centerstone.

45. That report rated Ms. Solano's performance as "Satisfactory" (defined in the scoring scale as "fulfilled expectations.").

46. That same month, Ms. Solano also informed Ms. Christian that she had been officially diagnosed with autism spectrum disorder.

47. Ms. Christian assured Ms. Solano that she was "not a useless part of the team."

48. She added, "I listen to your calls and you do well. We all have a time where we have to take a break bc (*sic*) of a call."

49. Ms. Solano also made Ashlyn Leatherwood ("Ms. Leatherwood"), a Crisis Care Consultant at Centerstone, aware of her recent diagnosis.

50. Ms. Leatherwood reiterated Ms. Christian's praise of the work that Ms. Solano does for Centerstone: "I love having you on the lines. You do an incredible job[.]"

**Centerstone Removes Ms. Solano From All Scheduled Shifts**

51. On September 15, 2022, Ms. Solano requested a meeting with Ms. Bombardiere to ask if she could transition to working as a Chat/Text Crisis Specialist.

52. Ms. Bombardiere said there were no openings, but suggested Ms. Solano could start making more follow-up calls for the Crisis Department, as it often had outbound calls that needed to be made to high-risk individuals and clients who had been recently released from the hospital.

53. Ms. Solano agreed that would be a good idea, since that would help avoid the dysregulation she experiences.

54. The next day, however, Ms. Solano was asked to attend a Zoom meeting with Sherry Randles, Director of Crisis Services, and Tonya Gilbert, ("Ms. Gilbert") Director of Human Resources.

55. In that meeting, Ms. Solano was informed that all her shifts had been removed from the call schedule.

56. She was also told that Centerstone would not provide her requested accommodations.

57. Centerstone did not transfer or reassign Ms. Solano to a vacant position that she was qualified for.

58. Instead, Ms. Gilbert told Ms. Solano she would have approximately one (1) week to apply for other positions at Centerstone, and that the process would be competitive, requiring her to apply and interview.

59. Two (2) weeks after that meeting, Ms. Solano asked Ms. Gilbert and Ms. Randles about the status of her employment at Centerstone. Specifically, she said, "After I requested accommodations for my disability, I was removed from the call schedule. Please advise me of my current status."

**Centerstone Terminates Ms. Solano's Employment**

60. On October 3, 2022, Ms. Solano received an e-mail from Centerstone that her employment had been terminated due to "poor job performance."

61. However, other employees with documented performance issues were not immediately terminated like Ms. Solano was.

62. For example, on April 1, 2022, Centerstone management met with Andrew Kuluk ("Mr. Kuluk"), another Crisis Care Consultant, to warn him about his job performance.

63. Mr. Kuluk was subsequently given the opportunity to improve his performance over the next thirty (30) days, or else be terminated by Centerstone.

64. Ms. Solano was not afforded any notice, or thirty-day improvement period to correct her alleged performance issues.

65. Upon information and belief, Mr. Kuluk is not a qualified individual with a disability.

66. Centerstone did not engage in an interactive process to explore potential reasonable accommodations that would allow Ms. Solano to perform her job.

67. Ms. Solano suggested specific reasonable accommodations to allow her to perform her job, including having access to the call queue and a short break between calls so she could process them.

68. Centerstone failed and refused to accommodate Ms. Solano by allowing her to take short breaks between calls and having access to the call queue.

69. Centerstone did not provide any alternative accommodations.

70. Centerstone discriminated against Ms. Solano under the ADA and TDA.

71. Centerstone retaliated against Ms. Solano for engaging in protected activity, *i.e.*, requesting an accommodation, when it terminated her after engaging in the protected activity.

## Count I
## Violation of ADA– Disability Discrimination

72. Plaintiff restates and incorporates herein the above paragraphs in their entirety.

73. Plaintiff was diagnosed with Type 1 diabetes, a chronic condition that substantially limits the major life activities of working, eating, and endocrine function. Her disability affects the major bodily systems of her endocrine function.

74. Plaintiff was diagnosed with autism spectrum disorder, a condition that substantially limits the major life activities of talking, learning, working, communicating, and interacting with others. Her disability affects the neurological major bodily system.

75. Plaintiff has a record of having such impairments, and/or was regarded as having such impairments.

76. Plaintiff was a qualified individual with a disability because she could perform the essential functions of her job with or without accommodation.

77. Defendant took adverse employment actions against Plaintiff because of her protected disabilities and/or her request for accommodations.

78. Plaintiff was replaced or her position remained open while Centerstone sought other applicants.

79. As a direct and proximate result of Defendant's unlawful acts, Plaintiff suffered and continues to suffer emotional pain, suffering, professional and personal embarrassment, humiliation, loss of enjoyment of life, inconvenience, actual damages and lost earnings and benefits.

80. As a result, Plaintiff is entitled to recover her damages, including lost wages and benefits, compensatory and punitive damages, attorneys' fees, costs, interest, front pay and benefits, and any other legal and equitable relief to which she may be entitled.

## Count II
## Violation of ADA– Failure to Provide a Reasonable Accommodation

81. Plaintiff restates and incorporates herein the above paragraphs in their entirety.

82. Plaintiff was a qualified individual with a disability.

83. Plaintiff was diagnosed with Type 1 diabetes, a chronic condition that substantially limits the major life activities of working, eating, and endocrine function. Her disability affects the major bodily systems of her endocrine function.

84. Plaintiff was diagnosed with autism spectrum disorder, a condition that substantially limits the major life activities of talking, learning, working, communicating, and interacting with others. Her disability affects the neurological major bodily system.

85. Plaintiff was otherwise qualified for her job.

86. Defendant knew of or had reason to know about Plaintiff's disabilities.

87. Plaintiff requested reasonable accommodations for her disabilities.

88. There were reasonable accommodations available that would have been effective and would not have posed an undue hardship to Defendant.

89. Defendant failed to provide a reasonable accommodation to Plaintiff.

90. Defendant failed and refused to engage in a good faith interactive process with Plaintiff to determine whether it could accommodate her request for reasonable accommodations.

91. Instead, Defendant unilaterally terminated Plaintiff without any discussion.

92. As a direct and proximate result of Defendant's unlawful acts, Plaintiff suffered and continues to suffer emotional pain, suffering, professional and personal embarrassment, humiliation, loss of enjoyment of life, inconvenience, actual damages and lost earnings and benefits.

93. As a result, Plaintiff is entitled to recover her damages, including lost wages and benefits, compensatory and punitive damages, attorneys' fees, costs, interest, front pay and benefits, and any other legal and equitable relief to which she may be entitled.

**Count III**
**Violation of ADA–Retaliation**

94. Plaintiff restates and incorporates herein the above paragraphs in their entirety.

95. It is federal public policy and law under the Americans with Disabilities Act that employees must be able to exercise their rights without fear of reprisal or penalty from an employer.

96. Plaintiff engaged in protected activity under the ADA when she requested reasonable accommodations. Such actions by the Plaintiff are statutorily protected activities under ADA.

97. Defendant knew of Plaintiff's engaging in the protected activity.

98. Defendant took adverse actions against Plaintiff.

99. Defendant retaliated against Plaintiff by refusing her accommodations, refusing to engage in an interactive process and terminating her employment for exercising her rights under the ADA, *i.e.*, requesting an accommodation.

100. There was a causal connection between the protected activity and the adverse actions.

101. As a direct and proximate result of Defendant's unlawful acts, Plaintiff suffered and continues to suffer emotional pain, suffering, professional and personal embarrassment, humiliation, loss of enjoyment of life, inconvenience, actual damages and lost earnings and benefits.

102. As a result, Plaintiff is entitled to recover her damages, including actual damages, lost wages and benefits, compensatory and punitive damages, attorneys' fees, costs, interest, front pay and benefits, and any other legal and equitable relief to which she may be entitled.

## Count IV
## Violation of TDA – Disability Discrimination

103. Plaintiff restates and incorporates herein the above paragraphs in their entirety.

104. Plaintiff is a qualified individual with a disability.

105. She was diagnosed with Type 1 diabetes, a chronic condition that substantially limits the major life activities of working, eating, and endocrine function. Her disability affects the major bodily systems of her endocrine function.

106. Plaintiff was diagnosed with autism spectrum disorder, a condition that substantially limits the major life activities of talking, learning, working, communicating, and interacting with others. Her disability affects the neurological major bodily system.

107. Plaintiff disclosed her disabilities to Defendant and then thereafter was subjected to adverse terms and conditions of employment as compared to non-disabled individuals. Such adverse terms and conditions consisted of being stripped of job duties, not being transferred or reassigned to a vacant position she was qualified for and being terminated.

108. Such adverse employment actions were because of Plaintiff's disabilities.

109. As a direct and proximate result of Defendant's unlawful acts, Plaintiff suffered and continues to suffer emotional pain, suffering, professional and personal embarrassment, humiliation, loss of enjoyment of life, inconvenience and actual damages, and lost earnings and benefits.

110. As a result, Plaintiff is entitled to recover her damages, including actual damages, wages and benefits, compensatory and punitive damages, attorneys' fees, costs, interest, front pay and benefits, and any other legal and equitable relief to which she may be entitled.

**Count V**
**Violation of TDA Retaliation**

111. Plaintiff restates and incorporates herein the above paragraphs in their entirety.

112. Plaintiff was a qualified individual with a disability.

113. Plaintiff engaged in protected conduct when she disclosed her disabilities to Defendant.

114. This exercise of Plaintiff's protected rights was known by Defendant.

115. Defendant thereafter retaliated against Plaintiff on the basis of her disability in violation of the TDA, by subjecting her to adverse terms and conditions of employment, as detailed above, culminating in her discharge.

116. There was a causal connection between the protected activity and the materially adverse employment actions.

117. As a direct and proximate result of Defendant's unlawful acts, Plaintiff suffered and continues to suffer emotional pain, suffering, professional and personal embarrassment, humiliation, loss of enjoyment of life, inconvenience and lost earnings and benefits.

118. As a result, Plaintiff is entitled to recover her damages, including actual damages, lost wages and benefits, compensatory and punitive damages, attorneys' fees, costs, interest, front pay and benefits, and any other legal and equitable relief to which she may be entitled.

## RELIEF REQUESTED

Plaintiff respectfully requests:

1. A jury trial;

2. Judgment against Defendant for violations of federal law;

3. Back pay and damages for lost benefits and reimbursement for all costs due to the loss of her benefits;

4. Front pay;

5. Compensatory damages for embarrassment, humiliation, stress, anxiety, inconvenience, and loss of enjoyment of life;

6. Liquidated damages;

7. Punitive damages;

8. Attorneys' fees and expenses;

9. Prejudgment interest and, if applicable, post-judgment interest; and

10. Such other and further legal or equitable relief to which she may be entitled.

Respectfully submitted,

**Hunter Law Firm PLC**

*/s/ Anne Bennett Hunter*
Anne Bennett Hunter (BPR No. 022407)
Kaitlyn E. Lyons (BPR No. 040205)
101 Creekside Crossing, Suite 1700-307
Brentwood, TN 37027
(615) 592-2977
anne@hunteremploymentlaw.com
kate@hunteremploymentlaw.com

*Attorneys for Plaintiff*